```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

CONNIE ROBINSON,                  *

     Plaintiff,                   *

vs.                               *
                                       CASE NO. 4:15-CV-193 (CDL)
UNITED STATES OF AMERICA,         *

     Defendant.                   *
```

O R D E R

On a rainy day, Plaintiff Connie Robinson went to buy gas at the Marne Road Express Class Six Shoppette at Fort Benning, Georgia. As Robinson entered the Shoppette, she slipped and fell. Robinson contends that the United States, which owns and operates the Shoppette, is liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, because it failed to exercise ordinary care to keep the store premises safe. The United States seeks summary judgment on Robinson's claims. For the reasons set forth below, the United States' motion (ECF No. 13) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment,

the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Robinson, the record reveals the following. Robinson went to buy gas at the Shoppette on the afternoon of May 14, 2014. Before Robinson arrived at the Shoppette, it had been raining. During Robinson's drive to the Shoppette, it was raining. When Robinson arrived at the Shoppette, the ground outside the Shoppette was wet, and she may have gotten "a few sprinkles" of rain walking from her car to the Shoppette from the gas pump. Robinson Dep. 48:1-6, ECF No. 14-1.

As Robinson entered the Shoppette, she walked across four mats that had been placed on the floor—two immediately outside the doorway and two immediately inside the doorway. Blanton Decl. ¶ 5, ECF No. 13-4. As Robinson stepped off a mat and onto the tile floor, she slipped and fell back onto the mat. Robinson Dep. 57:20-58:14, 61:25-62:4. Robinson did not see any water or other substance on the floor before she fell. But

2

after she fell, Robinson felt that the floor was wet. *Id.* at 58:18-59:5. A Shoppette employee came to mop the area after Robinson's fall, but "there was very little water to mop at that time." Richards Decl. ¶ 5, ECF No. 13-3. Between twenty-five and forty-five minutes after Robinson's fall, Robinson's husband and son arrived at the Shoppette. At that time, Robinson's son noticed water on the floor near the mat.

Before Robinson arrived at the Shoppette, Shoppette employees took precautions to limit the amount of rainwater that might be tracked into the store. Employees placed the mats on the floor near the door. An employee also placed two "Caution – Wet Floor" signs near the entryway.[1] Richards Decl. ¶ 5. On rainy days, Shoppette employees are tasked with checking to see if the floor near the entryway is wet; if it is, they mop up the water. A Shoppette employee inspected and mopped the entryway no more than thirty minutes before Robinson's fall. Before Robinson fell, that same Shoppette employee was not aware of any hazard in the vicinity of Robinson's fall. *Id.*

## DISCUSSION

Robinson asserts her claim against the United States pursuant to the Federal Tort Claims Act. Under the

---

[1] Robinson denies that the "Caution – Wet Floor" signs were placed, pointing to her deposition testimony that she was looking straight ahead at the time of the fall and that she saw people. Robinson Dep. 59:21-60:10. Even if this testimony creates a factual dispute as to whether the signs were placed, it does not change the outcome.

circumstances of this case, the United States is liable to Robinson under the FTCA to the extent that a private citizen would be liable under Georgia law. *See* 28 U.S.C. § 1346(b)(1). Georgia law, O.C.G.A. § 51-3-1, provides that "where the owner or occupier of land invites the public to enter the premises for a lawful purpose, 'he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.'" *Youngblood v. All Am. Quality Foods, Inc.*, No. A16A1063, 2016 WL 5922697, at *1 (Ga. Ct. App. Oct. 11, 2016) (quoting O.C.G.A. § 51-3-1). "[T]o recover under O.C.G.A. § 51-3-1, a plaintiff has the burden of proving: (1) that, prior to the slip and fall, the owner had actual knowledge of the hazard which caused the slip and fall, or that, under the circumstances, the owner was chargeable with constructive knowledge of the hazard, and (2) that, despite the exercise of ordinary care, the plaintiff lacked knowledge of the hazard prior to the slip and fall." *Id.* (citing *Am. Multi-Cinema, Inc. v. Brown*, 679 S.E.2d 25, 28 (Ga. 2009) and *Robinson v. Kroger Co.*, 493 S.E.2d 403, 406 (Ga. 1997)). "Store proprietors are not liable to patrons who slip and fall on floors made wet by rain conditions unless there has been an unusual accumulation of water and the proprietor has failed to follow reasonable inspection and cleaning procedures." *Walker v. Sears Roebuck & Co.*, 629 S.E.2d 561, 564 (Ga. Ct. App. 2006).

"The risk of harm imposed by some accumulation of water on the floor of business premises during rainy days is not unusual or unreasonable in itself, but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate." *Id.* (quoting *Cook v. Arrington*, 358 S.E.2d 869, 871 (Ga. Ct. App. 1987)).

Robinson relies on *Dickerson v. Guest Services. Co. of Virginia*, 653 S.E.2d 699, 701 (Ga. 2007), to oppose summary judgment. In *Dickerson*, there was evidence that an employee of the amusement park where the plaintiff fell had been notified that there was water on the stairs before the plaintiff fell and "had been aware of the hazard for some time" but did not make a reasonable effort to remove the hazard. *Id.* In contrast, here, Robinson did not point to any evidence that a Shoppette employee had actual knowledge of any accumulation of water—unusual or not—on the floor near the store's entryway.

Given that Robinson did not point to any evidence that a Shoppette employee had actual knowledge of an accumulation of water near the entryway, the next question is whether Robinson pointed to sufficient evidence to create a genuine fact dispute on whether Shoppette employees had constructive knowledge of a hazard. "A plaintiff can prove the owner's constructive knowledge of the hazard by showing: (1) that an employee of the owner was in the immediate area of the hazard and could have

5

easily seen the hazard and removed it prior to the slip and fall, or (2) that the hazard had existed on the premises for a sufficient length of time that it should have been discovered and removed if the owner had exercised ordinary care to inspect the premises to keep it safe." *Youngblood*, 2016 WL 5922697, at *1.  Robinson did not point to evidence to create a genuine fact dispute under either method.

Based on the present record, the Court cannot conclude that Robinson pointed to sufficient evidence to suggest that a Shoppette employee had constructive knowledge that an unusual amount of water had accumulated near the entryway before Robinson fell.  Though Robinson contends that she fell near a cash register, she did not point to any evidence that a Shoppette employee was in the immediate area where she fell and could have easily seen water on the floor before she slipped and fell.  Robinson also did not point to evidence that there had been an accumulation of water on the floor for so long that a Shoppette employee should have discovered it and mopped it up.  Robinson did not point to any evidence to dispute that a Shoppette employee had inspected and mopped up the area no more than thirty minutes before Robinson fell.  She also did not point to any evidence of how much water accumulated after the area was mopped but before she fell.

6

Robinson argues, however, that there is a fact question on whether Shoppette employees knew that there was water on the floor before her fall because (1) the Shoppette had rainy day procedures since water could accumulate on the floor on rainy days and (2) an employee mopped the area where Robinson fell no more than thirty minutes before Robinson's fall.  Neither the existence of rainy day procedures nor a Shoppette employee's inspection and mopping of the area thirty minutes before the fall establishes that Shoppette employees knew that water had accumulated near the entryway shortly before Robinson's fall.  The employee's conduct simply suggests that Shoppette employees periodically inspected and mopped the entryway and did so no more than thirty minutes before Robinson's fall.  Robinson also did not point to any evidence to suggest that the conditions of May 14, 2014 should have put Shoppette employees on notice that they should conduct more frequent inspections of the entryway.

In summary, Robinson did not point to sufficient evidence to create a genuine fact dispute on whether there was an unusual accumulation of water on the floor before her fall or whether a Shoppette employee had actual or constructive knowledge that there was an usual accumulation of water.  Without such evidence, Robinson's claims fail.

CONCLUSION

The law does not provide a legal remedy for every mishap in life.  As explained above, falling on a wet floor on a rainy day, which is all we have here, is one of those unfortunate mishaps for which there is no legal remedy.  Accordingly, the Court grants the United States' summary judgment motion (ECF No. 13).

IT IS SO ORDERED, this 21st day of November, 2016.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
